[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 13131
By complaint dated July 25, 2000, the Plaintiff husband, Gary L. Noggle, commenced an action seeking a dissolution of marriage on the grounds of irretrievable breakdown, joint legal custody of the minor children, child support, a fair and equitable property settlement and other relief. The Defendant initially filed a pro se appearance on August 3, 2000 with appearances filed by counsel on subsequent dates. Attorney Kristen Mansfield was appointed counsel for the minor children by order of the Court on September 28, 2000. The Plaintiff and the Defendant appeared with their counsel on September 12, September 13 and September 14. The minor children were also represented at the trial by court appointed counsel. The Court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The Plaintiff husband married the Defendant wife (whose maiden name was Clark) on November 3, 1990 at Newport News, Virginia. He has continuously resided in the state of Connecticut for one year next preceding the date of the filing of his complaint. All statutory stays have expired. The parties have three minor children born to the Defendant wife since the date of the marriage, all issue of the marriage; namely: Matthew W. Noggle born August 14, 1990, Andrew D. Noggle born January 10, 1992, and Daniel L. Noggle born February 12, 1995. No other minor children have been born to the Defendant wife since the date of the marriage. The Court finds that no state or municipal agency is or has contributed to the support of the parties and/or their minor children.
The Plaintiff is a 36 year old individual who graduated from high school with two years of post high school education. After high school the Plaintiff enrolled in the naval services of the United States. After release from the Navy the husband engaged in various computer systems employment in Virginia, Connecticut and Mashantucket. He is presently employed in the computer industry for a large insurance company where he performs work from Friday through Monday with many of his employment duties performed from a home-based computer. The Plaintiff enjoys good physical health. He resides with the children as a result of a pendente lite order granting him custody of the children and residence at the marital home located at Route 165, Preston, Connecticut. The Plaintiff enjoys income in excess of $1,200.00 per week received from his employer. The Court finds that the Plaintiff works to his earning capacity as a computer system employee in his present occupation. Venutiv. Venuti, 185 Conn. 156, 101 (1981); Lucy v. Lucy, 183 Conn. 230, 234
(1984); Miller v. Miller, 181 Conn. 610, 611-612 (1980).
The Defendant wife is a 30 year old high school graduate. Prior to her marriage with the Defendant she was employed as an executive secretary. CT Page 13132 The Defendant worked in the secretarial field at the time of the commencement of her marriage until approximately two years thereafter when she was involved in a serious auto collision in 1992.
Since the date of the collision the Defendant has not had a regular job outside of her duties as a homemaker. The Defendant has been involved in a total of five automobile collisions since the date of the marriage. The Defendant has suffered and presently suffers from muscle and bone problems, fibromyalgia, sciatica, TMJ, and disc degeneration. In addition to said physical conditions, the wife has been the recipient of psychiatric and/or psychological care and takes medication to deal with her physical and emotional problems. The Defendant has been awarded Social Security disability since the early 1990's. She is presently unable to perform substantial gainful employment on a regular basis, due to the uncontroverted medical conditions testified to by the Defendant, and the emotional problems as a sequela from her physical ailments.
The Court hereby finds that the Defendant is not a suitable candidate for substantial gainful employment on a regular and/or intermittent basis at this time based on the Defendant's present physical and emotional condition. The Court hereby concludes that the Defendant has no reasonable earning capacity at this time. The Court is cognizant of the claims of the Plaintiff that the Defendant could go out and seek intermittent work or part time work to supplement her Social Security. The Court concludes after reviewing the record and observing the Defendant's demeanor at trial that she is not a candidate for part-time employment at the present time. The record is devoid of convincing evidence for the Court to conclude that the Defendant has the present ability to seek and maintain regular part-time employment.
The parties all came to court prepared to litigate a fully contested case. Prior to the commencement of trial, however, the parties presented a Custody and Visitation Stipulation dated September 12, 2001. The Court, after review of the document, read the stipulation into the record. The Plaintiff and Defendant were canvassed and the counsel for the minor children questioned as to whether or not said agreement was in the best interest of the children. The parties all stated that said agreement was fair and equitable and that it should enter as an order of the court. The Court then approved said stipulation and will incorporate it into this judgment as hereinafter more fully set forth.
After approving the stipulation, the Court was then left with the trial of a limited contested case. The parties agreed that the Court would hear testimony and review exhibits pertaining to financial matters; i.e., alimony, child support, property settlement, payment of debts, counsel fees and distribution of assets. CT Page 13133
The Plaintiff and Defendant were at loggerheads as to the cause of the breakdown of the marital relationship. The Plaintiff contended that the cause of the breakdown of the marriage was the lack of communication between the parties and inability to co-parent the children. The Plaintiff further contended that he engaged in no sexual relations with the Defendant and further did not sleep in the same room with the Defendant since 1994. The Defendant further denied any inappropriate sexual contact with the Defendant. He further denied any physical contact with the Defendant initiated by him. He also denied any extramarital relationships with members of the opposite sex from the date of the marriage up through the dates of the trial.
The Defendant testified totally to the contrary. The Defendant testified that she had sexual relations with the Plaintiff up until July of 2000. She further testified that the Plaintiff forced her into inappropriate sexual contact for years during the marriage. She further contended the Plaintiff engaged in physical abuse to her testifying as to specific events throughout the course of the marriage. She further stated that the Plaintiff emotionally abused her and was totally inconsiderate in his dealings with her considering her physical and emotional state. The Defendant further testified as to various sexual conduct by the Plaintiff with members of the opposite sex.
After hearing the testimony of the Plaintiff Defendant and family members called as witnesses by the Defendant, the Court concludes that the cause of the breakdown of the marriage between the parties was attributable to each in part. The Court concludes that the Plaintiff was not candid with the Court concerning his lack of intimate contact with his own wife during the marriage. The Plaintiff testified that he engaged in no sexual relations with any member of the opposite sex from 1994 to the date of the marriage. He further indicated that he was not intimate with his wife from 1994 to the date of the trial. After cross examination by counsel for the Defendant who questioned the Plaintiff as to statements given to a therapist, the Plaintiff recanted his testimony.
The Court concludes that the Plaintiff was not candid with his wife and the Court. The Court concludes that the Plaintiff was not the celibate individual that he attempted to portray to the Court in his relationship with his wife since 1994. The Court concludes that the Plaintiff further was involved in extramarital relationships with members of the opposite sex; be they sexual or otherwise. The Plaintiff sought the comfort and solace of members of the opposite sex while engaging in sexual relations with his wife. The Court also concludes that the testimony of the Defendant's sister is credible. The Plaintiff did in fact proposition his sister-in-law while the parties were residing together as man and wife. CT Page 13134 The credibility of witnesses is left to the sole discretion of the trier of fact. Christie v. Eager, 129 Conn. 62 (1942).
As to the wife's claims of physical and emotional abuse, the Court concludes that the Defendant has failed to corroborate her claims of inappropriate sexual contact by the Plaintiff. The Defendant has also failed to corroborate that she received any physical injuries as a result of physical contact, if any, from the Plaintiff. The Defendant failed to persuade the trier of fact that she was physically abused by the Plaintiff, which finding is consistent with the finding of trial court at the pendente lite stage. (See Plaintiff's Exhibit 5.) Reference was made in her testimony to medical reports and statements made to medical experts. No documents were submitted into the record as exhibits. No medical experts were called to testify by the Plaintiff. The Court further reviewed the Defendant's allegations of inappropriate physical and sexual contact by the Plaintiff to the Defendant and alleged inappropriate conduct by the Plaintiff to his children. Said allegations were not sufficiently corroborated at the 46b-15 hearings. In fact, sole custody of the minor children was placed with the Plaintiff, pendente lite. The Court therefore concludes that the Defendant contributed to the cause of the breakdown of the marriage due to her unsubstantiated claims of emotional and physical abuse by the Plaintiff during the marriage.
What the Court is left with is a family in emotional and financial distress. The Court is left with the unenviable task of dividing the marital assets and debts and determine the amount of child support and/or alimony, if any, to be awarded. The parties presented financial affidavits to the Court showing an inability of the Plaintiff and/or Defendant to make payments on past liabilities based on an insufficient amount of income. As a result of the trial court orders at the pendente lite stage, the Defendant was forced out of the marital residence, required to live with family and/or friends.
The Plaintiff claims that the Defendant should receive no alimony and that she should pay a portion of her Social Security disability awards attributable to benefits for her three minor children directly to the Plaintiff. The parties did agree that the Defendant's right, title and interest in and to the marital residence be transferred to the Defendant who shall pay the mortgage, taxes, insurance on the property and hold the Defendant harmless. The parties also agree as to the amount of the child support payable by the Defendant to the Plaintiff. The parties could not agree on Plaintiff's claim to alimony.
The Court has considered all the statutory factors concerning custody and visitation set out in Connecticut General Statutes (C.G.S.) §§46b-56, 46b-56a and 46b-59. The Court has also considered all the factors CT Page 13135 set forth in C.G.S. §§ 46b-62, 46b-81, 46b-82, 46b-83 and 46b-84 and other pertinent statutes, tax implications, earnings and earning capacity, differential, causes for the breakdown of the marriage and consequences of financial award set forth below. The Court finds that the facts set out in the complaint are proven and are true. The marriage is broken down on grounds of irretrievable breakdown. Judgment will enter dissolving the marriage on the grounds of irretrievable breakdown. It is further ordered that:
1. CUSTODY AND VISITATION
a. The Plaintiff shall be granted sole custody of the minor children.
b. The Defendant shall be entitled to supervised visitation, at the Madonna Place, every other Monday from 5:00 p.m. to 6:00 p.m. commencing Monday, September 17, 2001. Subject to Madonna Place's consent, the maternal grandmother may participate in said visitation, provided she comply with their rules and regulations and executes all requested authorization.
c. The Defendant shall be entitled to additional reasonable supervised visitation at Madonna Place, as available, and mutually agreed by Madonna Place and the parties.
d. The parties shall cooperate with DCF and Norwich Youth and Family Services to enroll and participate in family counseling with the children, with the intention, if recommended, to alternate the counseling sessions between the parties.
e. Plaintiff shall provide Defendant, through counsel, copies of the children's school, medical and counseling records.
f. All of the preceding custody and visitation provisions shall be reviewable by the Court no sooner than six months from today's date upon proper motion filed by either party or counsel of the minor children.
2. CHILD SUPPORT
The Defendant shall pay to the Plaintiff the sum of $122.00 per month per child; said sum representing each child's Social Security benefits payable to the Defendant in her monthly Social Security check. The parties are further ordered to execute any and all documents necessary to have said sum payable directly to the Plaintiff as representative payee for each of said minor children. The Plaintiff shall take the minor children as exemptions for state and federal tax purposes. CT Page 13136
3. MEDICAL COVERAGE FOR CHILDREN
a. The Plaintiff shall maintain health insurance as available through his place of employment for the benefit of the minor children. The parties shall share any and all unreimbursed, uncovered medical, dental, optical, opthalmological, orthopedic, orthodontic, pharmaceutical and psychological expenses incurred on behalf of the minor children, two-thirds (2/3) paid by the Plaintiff and one-third (1/3) paid by the Defendant.
b. The provisions of C.G.S. § 46b-84 (e) shall apply.
4. MEDICAL INSURANCE COVERAGE FOR THE DEFENDANT
The Defendant is presently covered by Medicare A and B. The Defendant is entitled to COBRA coverage for dental insurance through the Plaintiff's insurance carrier at his place of employment. Both parties are ordered to execute any and all documents necessary to continue dental insurance coverage for the Defendant, with payment made by the Plaintiff until the first of the occurrence of the following events when said payment obligation shall terminate: (1) death of either party (2) remarriage of the wife (3) cohabitation of the wife as provided by statute or (4) expiration of the statutory COBRA time period of coverage. Said coverage costs are $24.00 per month at the time of trial.
5. ALIMONY
The Plaintiff shall pay to the Defendant the sum of $150.00 per week. Said alimony shall terminate upon the first of the occurrence of the following events: (1) death of either party or (2) remarriage of the wife or (3) cohabitation by the wife as provided by statute.
6. LIABILITIES
Each party shall be liable to pay his or her own separate debts. The Court makes no order for indemnification in that both parties may choose to avail themselves of the right to file for bankruptcy protection under the chapters of the Federal Bankruptcy Code.
7. REAL PROPERTY
a. The Defendant shall quit claim all of her right, title and interest in and to the marital residence located at 1 Route 165, Preston, Connecticut to the Plaintiff husband.
b. Said property shall be appraised by James Blair of Reiss Agency to CT Page 13137 obtain the fair market value. The cost of said appraisal shall be paid by the Plaintiff
c. Upon receipt of the appraisal, the fair market value minus the sum of the first and second mortgage/equity loan and the cost of appraisal shall establish the residence's equity, which shall be divided equally by the parties. The Plaintiff shall further execute and deliver to the Defendant a mortgage deed and note in an amount equal to her one-half (1/2) equity. Said note shall bear the simple interest rate of 4% with payment upon demand on the first of the occurrence of the following events: the date the youngest child reaches eighteen (18) years of age, death of the plaintiff, sale of the property, refinance of the property. Said mortgage note shall contain a provision for reasonable attorney's fees and cost or collection should the Plaintiff be in default.
If the property has no equity after deduction of the first and second mortgage/equity loan and the cost of the appraisal, the Plaintiff shall own the property free and clear of any claim of the Defendant with the Defendant not responsible for any of the expense incurred by the Plaintiff for the real property appraisal.
8. PERSONAL PROPERTY
a. The Plaintiff shall retain all right, title and interest in and to the 1999 Javelin boat and all accessories related thereto and shall further pay any loans, taxes and insurance concerning said boat.
b. The Plaintiff shall retain possession and ownership and title to the 2000 Ford F-150 and shall pay any and all loans, taxes and insurance costs for said vehicle.
c. The Plaintiff shall have all right, title and interest in and to the items of personal property left in his possession after transfer to the Defendant of the articles of personal property set forth below.
d. The Defendant shall retain all right, title and interest in the Coleman boat and all accessories related thereto.
e. The Defendant shall retain possession and ownership and sale to the 1997 Pontiac Bonneville and shall pay any and all loans, taxes and insurance costs for such vehicle.
f. The Defendant shall have all right, title and interest in and to items 1-57 of "Lois Noggle's Belongings Approved by Gary Noggle 9/13/01" with the exclusion of items 34, 35, 42, 43 and 44 (floor fan) which shall remain with the Plaintiff and items 16 and 39 which have been discarded. CT Page 13138 As to the list entitled "Lois Noggle's Belongings Contested by Gary Noggle 9/13/01," the Defendant shall have all right, title and interest to items 1 to 26 with the exclusion of items 4, 6, 22 and 25 which shall remain the sole property of the Plaintiff. The Defendant shall have 60 days from the date of judgment to remove said property from the marital residence.
9. CITIGROUP STOCK OPTIONS
The Plaintiff has vested Citicorp stock options equal to 20% x 60 shares = 12 shares as of the date of the trial. The Plaintiff shall have the sole power to exercise said options at his discretion and at his sole cost and expense. The Plaintiff and the Defendant shall divide equally the net gain from the exercise of the options and sale of the first 12 shares sold by the Plaintiff. "Net gain" is described as the gross sales price minus the total of the following: amount paid to exercise option, costs of sale, if any, and the estimated state and federal taxes to be paid by the Plaintiff resultant from the sale of said stock.
10. ALLOWANCE TO DEFEND
The Plaintiff shall pay to the Defendant's counsel, Kenneth Leary, the sum of $1,000.00 as allowance to prosecute payable in full within 90 days of the date of the judgment.
11. ATTORNEY FOR THE MINOR CHILDREN
The attorney for the minor children, Kristen Mansfield, is awarded counsel fees in the amount of $3,113.75. The Plaintiff shall pay 2/3 of said fee and the Defendant shall pay 1/3 of said fee subject to credits due for previous payments by each party, which said parties shall consider incurred for matters involving the minor children's support, maintenance and custody.
12. LIFE INSURANCE
The Plaintiff shall maintain all life insurance available from his place of employment (present and future) with wife as irrevocable beneficiary of 25% of the death benefits until the Plaintiff's obligation to pay alimony terminates. The remaining 75% of the death benefits shall be payable to the children as irrevocable beneficiaries until the youngest reaches the age of 18 years old.
13. BANK ACCOUNTS
Each party shall be entitled to retain his/her sole and separate CT Page 13139 property such cash as he/she may possess and any bank accounts and credit union accounts listed on his/her respective financial affidavits (Plaintiff's dated 9/12/01, Defendant's dated 9/11/01).
Devine, J.